IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATSY REGINA BOWEN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant.<br>_____ | ) Case No.: 1:10-cv-02370 AWI JLT<br>)<br>) FINDINGS AND RECOMMENDATIONS<br>) REVERSING THE ADMINISTRATIVE<br>) DECISION DENYING PLAINTIFF BENEFITS,<br>) DIRECTING REMAND FOR PAYMENT OF<br>) BENEFITS, AND DIRECTING ENTRY OF<br>) JUDGMENT IN FAVOR OF PLAINTIFF<br>) PATSY BOWEN AND AGAINST<br>) DEFENDANT COMMISSIONER OF SOCIAL<br>) SECURITY<br>)<br>) |

Patsy Regina Bowen ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in his evaluation of the evidence. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the Court recommends the administrative decision be **REMANDED FOR PAYMENT OF BENEFITS**.

**PROCEDURAL HISTORY**[1]

Plaintiff filed an application for supplemental security income on March 22, 2007, alleging disability beginning September 1, 2005. AR at 109-11. Plaintiffs' applications were denied initially and upon reconsideration. *Id.* at 52-69. After denial of benefits, Plaintiff requested a hearing, which

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

was held before an ALJ on July 24, 2009. *Id.* at 29, 84. The ALJ determined Plaintiff was not disabled as defined under the Social Security Act and issued an order denying benefits on November 19, 2009. *Id.* at 15-24. Plaintiff requested a review by the Appeals Council of Social Security, which denied review of the ALJ's decision on October 18, 2010. *Id.* at 1-3. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for supplemental security income, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

### **A.   Relevant Medical Evidence**

Dr. James Nowlan, Jr., completed a comprehensive internal medicine evaluation on May 26, 2007. AR at 266-69.  Plaintiff reported she "had a headache for two years." *Id.* at 266.  Plaintiff she attributed to her headache pain to "lifting a heavy object, which caused something to snap in her neck." *Id.*  Plaintiff reported her pain "extend[ed] the pain extend up the back of her head up to the top of her head," which lasted for two days when it occurred, and happened about four times a week. *Id.*  Plaintiff said she suffered from photophobia and nausea with the pain.  *Id.*  Dr. Nowlan noted Plaintiff's range of motion was "[q]uite limited by pain" in her cervical region.  *Id.* at 267.  Dr. Nowlan believed Plaintiff's "headache would produce only limited physical impairment, but she might not function well while she was having that pain." *Id.* at 268.  He noted Plaintiff reported having a headache at the time of the examination, and "the pain in her neck and the top of her head seemed quite prominent." *Id.* at 266, 268.  Dr. Nowlan diagnosed Plaintiff with tension headaches and bursitis of the shoulders.  *Id.* at 268.  According to Dr. Nowlan, Plaintiff had an unlimited ability to sit; she could stand and walk for six hours in an eight-hour day without an assistive device; and Plaintiff could lift 10 pounds occasionally and frequently.  *Id.*  Dr. Nowlan opined, "There were

3

moderate postural limitations because of the headache, putting her in a situation where she might lose her balance doing postural types of things." Also, Plaintiff "had slight manipulative limitations because of the pain in her shoulders." *Id.* at 269.

Dr. Lance Portnoff competed a psychological evaluation of Plaintiff on June 2, 2007. AR at 270-75. Dr. Portnoff observed Plaintiff had a "coherent and organized" through process, though it was "mildly concrete." *Id.* at 271. On the WAIS-III, Plaintiff "achieve[d] a Full-Scale IQ of 63, which is considered to fall within the range of Mildly Deficient Intellectual Functioning." *Id.* at 271. Dr. Portnoff explained, "This score is derived from composite scores on the Verbal (VIQ-66) and Performance (PIQ-65) Scales . . . There is also no difference between the Verbal Comprehension (67) and Perceptual Organization (67) Index Scales." *Id.* Dr. Portnoff observed, in comparison to others of Plaintiff's age, she had "impaired" processing speed, concentration, and basic attention. *Id.* at 272. On the WMS-R, Plaintiff's General Memory Index of 65 fell "within the range of Marked (immediate) Memory Impairment, and Plaintiff was "below-average" with her Verbal Memory Index of 71 and Visual Memory Index of 73. *Id.* at 272. Based upon the testing, Plaintiff's behavior and complaints, and her social/medical history, Dr. Portnoff offered the following conclusions:

- A. She is able to understand, carry out, and remember simple instructions.
- B. She has moderate limitations in her ability to respond appropriate to co-workers, supervisors, or the public, because of the deficiencies in concentration, language skills, reasoning, memory, and judgment, and because of depression.
- C. She has mild-to-moderate limitations in her ability to respond appropriately to usual or routine work situations, such as attendance and safety due to memory and judgment deficits.
- D. She has moderate limitations in her ability to deal with unexpected changes in a routine work setting, because of deficiencies in reasoning, mental flexibility, and judgment.

*Id.* at 274. Further, Dr. Portnoff found Plaintiff did not have any restrictions in her daily activities. He opined Plaintiff had "mild limitations in maintaining social functioning" and "mild-to-moderate difficulties with concentration, persistence, and pace, as measured by psychometrics." *Id.* Dr. Portnoff diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depressed mood; a moderate learning disorder, not otherwise specified. *Id.* at 273.

On June 14, 2007, Dr. Roger Fast completed an assessment of Plaintiff's physical residual functional capacity. AR at 276-80. According to Dr. Fast, Plaintiff had the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk with normal breaks for six hours in an eight-hour day, and sit for six hours in an eight-hour day with normal breaks. *Id.* at 277. Plaintiff had limited ability to push and pull in her upper and lower extremities due to "[n]eck and shoulder pain with cervical disc disease." *Id.* Likewise, Plaintiff was limited in reaching in all directions due to her pain, but she could occasionally climb ladders, ropes, or scaffolds. *Id.* at 277-78. Plaintiff could frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. *Id.* Dr. Fast found no further manipulative, visual, communicative, or environmental limitations. *Id.* at 278-79. Consequently, Dr. Fast opined a "light RFC" was appropriate.[2] *Id.* at 280, 283.

Dr. Aquino-Caro completed a mental residual functional capacity assessment and psychiatric review technique form on July 16, 2007. AR at 284-97. Dr. Aquino-Caro opined Plaintiff had an organic mental disorder due to her borderline scores and reading limitations. *Id.* at 284-85. Dr. Aquino-Caro determined Plaintiff had no restrictions in her activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. *Id.* at 292. Further, Dr. Aquino-Caro opined Plaintiff was "not significantly limited" in her ability to understand, remember, and carry out very short and simple instructions. *Id.* at 295. In addition, Plaintiff was not significantly limited in the following abilities: to remember locations and work-like procedures; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination or proximity to others without being distracted by them; to make simple work-related decisions; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 295-96. Plaintiff was "moderately limited" in understanding, remembering, and carrying out detailed instructions. *Id.* at 295. Dr. Aquino-Caro offered no opinion on Plaintiff's ability to respond

---

[2] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 1983 SSR LEXIS 30.

appropriately to changes in the work setting. *Id.* at 296. However, Dr. Aquino-Caro believed Plaintiff was "not significantly limited" in all other areas of social interaction and adaption. *Id.* Dr. Aquino-Caro opined Plaintiff: "Can understand simple instructions. Can sustain conc[entration] 2 hrs at a time. Can [] relate and adapt." *Id.* at 297.

Plaintiff's treating physician, Dr. Eric Sorenson, completed a questionnaire regarding Plaintiff's impairments on September 24, 2007. AR at 379. Dr. Sorenson opined Plaintiff's "severe overwhelming anxiety" precluded her from performing any full-time work at any exertion level. *Id.* Dr. Sorenson believed Plaintiff's impairments included also her inability to read, degenerative disc disease, and osteoarthritis. *Id.* He opined Plaintiff had the ability to sit for over six hours in an eight hour day, and to stand and/or walk for one hour without rest or support. *Id.* However, Dr. Sorenson believed Plaintiff must lie down or elevate her legs for four to six hours in an eight hour day. *Id.*

On May 12, 2008, Dr. Romeo Mariano completed an initial medical evaluation of Plaintiff's mental health treatment at Kings View Counseling Services. AR at 454- 62. Dr. Mariano opined Plaintiff had impairments in "psychological function, social functioning, occupational functioning, school functioning, [and] maintenance of food." *Id.* at 459. In addition, he found Plaintiff had "a symptom syndrome consistent with Major Depressive Disorder, Single Episode, Severe Without Psychotic Features." *Id.* In discussing Plaintiff's prognosis, Dr. Mariano noted: "guarded, chronic illness, severe illness, serious disability." *Id.* at 461.

**B. Hearing Testimony**

Plaintiff testified before an ALJ on July 24, 2009. AR at 30. Plaintiff reported she was in special education classes in school, and she completed the eleventh grade. *Id.* at 35, 37. Plaintiff said she did not get a GED, or attend a trade or vocational school. *Id.* at 35. She reported she did not know how to read, and did not spend any time using computers. *Id.* at 34.

According to Plaintiff, she suffered depression, headaches, neck and shoulder pain, and "a lot of pinching" in her fingers and down her right side. AR at 35-36, 38, 42. Plaintiff said, "I get the headaches because of my neck . . . when my neck is bothering me, my head hurts, that's where the headaches come from." *Id.* at 40. She reported that she had headaches "[a]ll the time." *Id.* Plaintiff

said that the headaches went away for about four or five hours if she took her medicine, but would return. *Id.* Plaintiff believed she was no longer able to work because of her pain. *Id.*

Plaintiff stated she was able to take care of her personal needs, such as bathing, getting dressed, and fixing her hair. AR at 33. Plaintiff stated she occasionally cooked, did laundry, and cleaned her apartment. *Id.* at 34. Plaintiff said no one helped her, but she did chores only occasionally because doing so caused pain. For example, Plaintiff testified that when she cleaned her bathtub, being bent over "bothered [her] real bad" and caused the pinching feeling. *Id.* at 39.

She reported "a little problem sitting down" and estimated she could sit an "hour maybe." *Id.* at 37. Plaintiff said she could stand for thirty minutes, and she could walk a block to the store, but was "tired and . . . hurting" when she and had to lie down for "an hour and a half, two hours." *Id.* at 37-38. Also, Plaintiff said she could lift her granddaughter who weighed twelve pounds, but was unable to "even hold her long." *Id.* at 37. Plaintiff said she was unable to reach over her head with either arm, but had no problems reaching in front. *Id.* at 42. Plaintiff said she was able to drive, but did not do so because she did not have a car. *Id.* at 33. She said she watched television for "[a]bout six hours" a day. *Id.* at 34. Also, she would lie down twice a day for about an hour and a half at a time. *Id.* at 41. Plaintiff "sometime[s]" visited with friends or family, but did not go to movies and said she was unable to attend church. *Id.* at 34-35.

Plaintiff testified that she received treatment from Dr. Sorenson at Central Valley clinic every other week, and Dr. Sorenson gave her pain pills or a shot. *Id.* at 36. According to Plaintiff, she had received mental health treatment, and anticipated starting again the Monday after the hearing, but had stopped in December or 2008 "to concentration on [her] grandchildren who were living in a foster home. *Id.* at 42-43.

**C.  The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her application date of March 22, 2007. AR at 17. Second, the ALJ found Plaintiff had the following severe impairments: neck and shoulder pain, borderline intellectual functioning, and depression. *Id.* The ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. Specifically, the ALJ considered Listings 1.00 for disorders of the

musculoskeletal system, 11.00 for neurological disorders, and 12.05 and 12.06 for her mental impairments. *Id.* at 17-18.

Next, the ALJ found Plaintiff had the following physical residual functional capacity ("RFC"): "to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk 6 hours in an 8 hour workday; cannot climb ladders; can occasionally climb stairs, kneel, crouch, or crawl, and cannot do overhead work." In addition, the ALJ found Plaintiff was "limited to simple routine and repetitive work." *Id.* at 19. With this RFC, Plaintiff was unable to perform any past relevant work. *Id.* at 23. However, the ALJ found Plaintiff could perform other jobs exiting in significant numbers in the national economy. *Id.* Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 24.

## DISCUSSION AND ANALYSIS

The listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citation omitted, emphasis in original). At step three of the sequential evaluation, the claimant bears the burden of demonstrating that her impairments are the equivalent of listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5 (1987). 20 C.F.R. §§ 404.1520(d), 416.920(d). The Supreme Court explained, "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (emphasis in original). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Bowen*, 482 U.S. at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

Plaintiff contends the ALJ erred at step three of the sequential analysis in finding her impairments to not equal Listing 12.05(C). (Doc. 15 at 7). Listing 12.05 sets provides:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or

supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Paragraph C requires: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*, § 12.05(C).

Although the ALJ found Plaintiff had an IQ of 63,[3] the ALJ concluded "the 'paragraph C' criteria of Listing 12.05 were not met:

> [T]he claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Specifically, there is not evidence in the record that the claimant demonstrated an onset of borderline intellectual functioning before age 22, and the record does not support deficits in adaptive functioning.

AR at 19. Plaintiff counters that her IQ of 63, when coupled with her other impairments, satisfies the requirements of Listing 12.05(C). (Doc. 15 at 7). In addition, Plaintiff notes that "the record indicates that Plaintiff was in special education classes throughout her schooling and never learned to read." *Id.*

On the other hand, Defendant asserts, "The fact that Plaintiff attended special education classes does not equate with mental retardation, as Plaintiff argues." (Doc. 18 at 6). Significantly, however, this Court has held that "evidence of participation in special education classes permits an inference of an onset date for mental retardation before age 22." *Reyna v. Astrue*, 2011 U.S. Dist. LEXIS 61624, at *14 (E.D. Cal. June 8, 2011) citing *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1061 (C.D. Cal. 2010)); *see also Sorter v. Astrue*, 389 Fed. Appx. 620, 622 (9th Cir. 2010) (observing a claimant "was in special education classes throughout his school years, showing that his low intellectual functioning manifested prior to age 22"); *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (a claimant presented evidence that his mental retardation was manifested before age 22 when he attended special education classes, dropped out of school in the ninth grade, had difficulty with core subjects such as reading, and fought with other children). Thus, the evidence that Plaintiff attended special education

---

[3] Significantly, a claimant is not required to produce an IQ score prior to age 22 to establish an onset of mental retardation prior to age 22. *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1061 (C.D. Cal. 2010).

classes, cannot read and failed to complete high school, permits an inference of an onset for mental retardation before age 22. As a result, the ALJ's finding that there was no evidence that Plaintiff demonstrated an onset of borderline intellectual functioning before she was 22 was error.

In addition, the ALJ erred in finding Plaintiff did not satisfy the requirement of "an additional and significant work-related limitation of function." The Ninth Circuit explained, "[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633) (9th Cir. 1987). The Court "emphasize[d], however, that a finding of severity is not required to satisfy the more than slight or minimal standard." *Id.* at 633, n. 3 (citing *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985) ("significant" work-related limitation of function involves something more than "minimal" less than "severe")). As a result, this Court determined that "a finding of severe impairment[s] at step two is a *per se* finding of 'impairment imposing an additional and significant work-related limitation of function' as employed in the second prong of Listing 12.05(C)." *Campbell v. Astrue*, 2011 U.S. Dist. LEXIS 12742, at *52 (E.D. Cal. February 8, 2011) (citing *Fanning*, 827 F.2d at 633). Notably, at step two, the ALJ concluded that, in addition to borderline intellectual functioning, Plaintiff had severe physical and mental impairments including neck and shoulder pain and depression. AR at 17. Thus, Plaintiff established that she had "impairments imposing an additional and significant work-related limitation of function," as required by Listing 12.05(C).

## FINDINGS AND RECOMMENDATIONS

Under 42 U.S.C. § 405(g), "The court shall have the power to enter, upon pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." The decision to remand an action to the Commission for an award of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Generally, an award of benefits is directed when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,

10

(2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed if further administrative proceedings would serve no useful purpose, or if the record has been fully developed.  *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to consider the evidence that Plaintiff's mental impairment was manifested before the age of 22.  In addition, Plaintiff satisfied the requirements of Paragraph C, because she had an IQ of 63, and the ALJ found her depression and pain were severe impairments.  There are no outstanding issues, and it is clear that the ALJ would be required to find Plaintiff disabled because she satisfied the requirements of Listing 12.05.  *See Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991) ("A claimant suffering from one of the[] listed impairments is presumed disabled, and no further inquiry is necessary.")  Consequently, no additional proceedings are necessary, and remand for payment of benefits is appropriate.  *See, e.g., Campbell v. Astrue*, 2011 U.S. Dist. LEXIS 12742 (remanding for payment of benefits where the ALJ failed to find the claimant satisfied the requirements of Listing 12.05(c)); *Campbell*, 2011 U.S. Dist. LEXIS 12742 (same).

Because the Court finds the ALJ erred at step three of the sequential evaluation, and that remand for payment of benefits is appropriate on this basis, the Court offers no findings on the remaining issues presented by Plaintiff in her appeal.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. The administrative decision denying benefits be **REVERSED**;
2. The case be **REMANDED** to the Commissioner of Social Security for payment of benefits; and
3. The Clerk of Court be directed to enter judgment in favor of Plaintiff Patsy Regina Bowen and against Defendant, Commissioner of Social Security.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within

fourteen days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **January 25, 2012**                                          /s/ Jennifer L. Thurston
                                                                                     UNITED STATES MAGISTRATE JUDGE